✓ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

3:50 pm, Oct 19 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

1:20-mj-2645 TMD

# AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Jonathan Poole, a Special Agent with the Drug Enforcement Administration (DEA) being duly sworn, state the following:

## PURPOSE OF THE AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant for Jerome Willingham III, for violations of 21 U.S.C. § 841(a) (Possession with Intent to Distribute Controlled Substances).

2. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of this investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## AGENT BACKGROUND

3. I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

4. I have been a Special Agent of the Drug Enforcement Administration ("DEA") since September of 2017. I am currently assigned to the Baltimore District Office, Strike Force Group 1, which investigates drug trafficking organizations and their ties to violence. I received 19 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Following graduation from the DEA Academy, I was assigned

to the Atlanta Field Division Office and worked there until July of 2018, when I was assigned to the Baltimore District Office in Baltimore, Maryland. Prior to my employment as a Special Agent with the DEA, I was employed as a police officer/detective by the City of Suwanee Police Department for 4 years, two of which I spent assigned to the Gwinnett Metro Drug Task Force in Gwinnett County, Georgia.

5. During my time as a law enforcement officer, I have participated in numerous investigations involving drug trafficking to include the use of confidential informants, undercover transactions, physical and electronic surveillance, telephone toll analysis, investigative interviews, the execution of search and seizure warrants, and the recovery of substantial quantities of narcotics, narcotics proceeds, and narcotics paraphernalia. I have reviewed recorded conversations, as well as documents and other records relating to narcotics trafficking and money laundering. I have examined records consisting in part of buyers and seller's lists, and pay/owe ledgers. I have interviewed drug dealers, drug users, and confidential informants and have discussed with them the lifestyles, appearances, and habits of drug dealers and drug users.

6. Through training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of firearms in connection with trafficking of such drugs, and the methods by which narcotics traffickers collect, store and conceal the proceeds of their illegal activities. I have also become familiar with the manner in which drug traffickers use telephones, cellular telephone technology, pagers, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

7. Through training, interviewing of dozens of persons arrested for controlled dangerous substance (CDS) offenses, watching hundreds of hours of surveillance of suspected

drug traffickers, and monitoring of countless hours of intercepted communications involving drug trafficking, I am familiar with the actions, traits, habits, and terminology utilized by drug traffickers.

8.      Through training and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of firearms in connection with trafficking of such drugs, and the methods by which narcotics traffickers collect, store and conceal the proceeds of their illegal activities. I have also become familiar with the manner in which drug traffickers use telephones, cellular telephone technology, pagers, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

9.      The information set forth in this affidavit derives from my personal knowledge and observations; discussions with other DEA agents and employees, other law enforcement officers, and witnesses; and my review of police reports and public records.  Because I submit this affidavit for the limited purpose of establishing probable cause for a complaint and arrest warrant, I have not included every fact known to me concerning this investigation.  Rather, I set forth only those facts that I believe are necessary to establish probable cause.  I have not, however, excluded any information known to me that would defeat a determination of probable cause.

## PROBABLE CAUSE

10.     In July of 2019, DEA investigators began investigating several drug trafficking organizations (DTOs) operating in a western section of Baltimore, MD known as "Penn North." During this investigation, investigators were able to conduct enforcement actions against several DTOs, thereby disrupting some of the drug operations in Penn North.  Following one such period of disruption, investigators learned that Jerome WILLINGHAM had begun engaging in drug sales

3

in the 500 blocks of Cumberland Street and Sanford Place in Penn North, an area formerly used by other DTOs.

11. On the morning of January 29, 2020, investigators were using Baltimore City CCTV cameras to conduct surveillance in the 500 block of Cumberland Street. Investigators saw WILLINGHAM standing on the sidewalk and engaging with several other subjects who appeared to be associates of WILLINGHAM. Over the course of approximately an hour, investigators saw WILLINGHAM and associates engaging in several hand-to-hand transactions consistent with that of illegal drug sales. At times, WILLINGHAM handed a clear baggie to one of the associates. On one occasion, the associate then immediately began engaged in a suspected hand-to-hand transaction, consistent with illegal drug sales, with an unidentified third party. On another occasion, in exchange for the clear baggie, the associate provided WILLINGHAM a bundle of what appeared to be U.S. Currency.

12. Additionally, investigators saw WILLINGHAM concealing objects suspected to be controlled dangerous substances (CDS) in the gas door of a nearby vehicle. During this time, investigators saw WILLINGHAM pull a handgun from his clothing and hold it down by his side for several moments before concealing it again on his person.

13. After observing this activity, investigators contacted the Baltimore Police Department (BPD) to inform officers of the firearm that was being brandished during and near the suspected CDS sales. As BPD officers arrived on scene, WILLINGHAM tried to hide between two parked vehicles. With officers approaching his position from both ends of Cumberland Street, WILLINGHAM attempted to run from the area, heading westbound on North Avenue and towards Pennsylvania Avenue, but was detained at the intersection of Cumberland Street and Pennsylvania Avenue.

14. WILLINGHAM had been able to discard the firearm just prior to his detention—specifically, dropping it while running. Officers immediately located the firearm along WILLINGHAM's flight path. The firearm was identified as a Smith and Wesson M&P .40 caliber handgun. The firearm was loaded with six bullets in the magazine and one bullet in the chamber.

15. Officers were also able to locate the aforementioned vehicle and recovered a bag of 50 gelatin capsules from behind the gas compartment door. Chemical analysis identified the contents of these gelcaps to contain approximately 17.8 grams of a substance or mixture containing fentanyl, a Schedule II controlled substance.

16. At the time of WILLINGHAM's arrest, a search incident to his arrest led to the recovery of two cell phones and a set of car keys. Investigators learned that one of those keys operated a Toyota sedan parked nearby (not the aforementioned vehicle where the CDS was recovered from the gas compartment door).

17. Following WILLINGHAM's arrest, investigators advised him of his constitutional right under *Miranda*. After waiving those rights and agreeing to speak with investigators, WILLINGHAM admitted to being in possession of the firearm because of the recent violence in the area. He also advised investigators that he had CDS and money in the Toyota sedan operated by the keys recovered from him. Pursuant to a search warrant authorized by the District Court for Baltimore City on January 29, 2020, investigators searched the Toyota and recovered 347 gelatin capsules and $917.00 of U.S. currency. Chemical analysis of those gelcaps identified the presence of approximately 120.8 grams of a substance or mixture containing fentanyl, a Schedule II controlled substance.

## **CONCLUSION**

Based on the foregoing, I respectfully submit that there is probable cause to believe that

**Jerome WILLINGHAM III** did knowingly and intentionally distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a).

*Jonathan Poole*
Jonathan Poole
Special Agent
Drug Enforcement Administration

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __19__ day of October, 2020.

Honorable Thomas M. DiGirolamo
United States Magistrate Judge

6